UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Benjamin Kim ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-02392 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| StoneX Group Inc., Global Asset Advisors ) | |
| LLC, Ken Packard and Glenn Swanson, ) | |
| individually ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Benjamin Kim filed a five-count complaint against Defendants StoneX Group Inc. ("StoneX"), Global Asset Advisors LLC ("Global"), Ken Packard, and Glenn Swanson, alleging racial discrimination and unlawful withholding of earnings, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"). Defendant StoneX has moved to dismiss all counts against its pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons outlined below, the Court denies Defendant's partial motion to dismiss Kim's complaint [Dkt. 8].

**Background**

For the purposes of assessing Defendant's Motion to Dismiss, the Court accepts the following facts as true. Defendant Global is a brokerage. Plaintiff Benjamin Kim was employed as a broker by defendant Global from 2011 until December 14, 2020. During the relevant period, individual defendants Ken Packard and Glenn Swanson served in managerial roles at Global. Around July 31, 2020, StoneX acquired GAIN Capital Holdings, Inc., Global's parent company,

1

therefore acquiring Global. Plaintiff alleges that he and defendants Packard and Swanson became employees of StoneX at that time. After the acquisition, Kim received a text message from Packard noting a plan to "integrate [with StoneX] as a team," and after the acquisition, Kim received at least one W-2 Wage and Tax statement identifying StoneX as his employer.

Kim, who is Asian-American, alleges that he was subjected to differential treatment based on his ethnicity during the course of his employment. Specifically, he alleges that he was subjected to racist remarks in the workplace, was denied career opportunities (such as responsibility for lucrative accounts), and had a greater amount of his earnings withheld as "reserves" for trading losses than similarly situated white employees, all in violation of Title VII. Kim also alleges that the withholding of earnings violated the FLSA and IWCPA. Ultimately, Kim was terminated on December 14, 2020.

**Legal Standard**

Although Defendant has fashioned its motion to dismiss under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), this Court will employ the legal standard articulated in Rule 12(b)(6) in assessing the motion. A claim must be dismissed under Rule 12(b)(1) if the district court lacks subject-matter jurisdiction to hear the case. But the Supreme Court has held that the question of whether a party is an employer within the meaning of Title VII is an element of the party's claim, and is not a jurisdictional question. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). Courts within this circuit have applied the same approach when assessing employment under the FLSA, and this Court will do the same. *See Gross v. Peoples Gas Light & Coke Co.*, No. 17-CV-3214, 2018 WL 558515 at *1 (N.D. Ill. Jan. 24, 2018) (Gottschall, J.); *Brown v. ABM Indus.*, Inc., No. 15 C 6729, 2015 WL 7731946, at *3 (N.D. Ill. Dec. 1, 2015) (St. Eve, J.). As employment status is not a jurisdictional question, this Court thus assesses Defendant's Motion to Dismiss under the standard found in Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

The question presented before the Court is whether StoneX employed Kim during the events in question. Defendant StoneX argues that it is was not Kim's employer within the meaning of any of the FLSA, IWPCA, and Title VII, and thus must be dismissed. Kim responds that he has sufficiently pled that StoneX was his employer or joint employer.

Courts adopt distinct, but similar, tests for determining whether a relationship constitutes an employer-employee relationship under the FLSA, IWPCA, and Title VII. "The Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA." *Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). Under these tests, enumerated in greater detail below, a court generally must examine the "economic reality" of the relationship. *Id.* at 808.

Here, there is no dispute that Global was Kim's employer. Rather, the question in dispute is whether StoneX was also his employer under the joint employer theory. In the Seventh Circuit, "for a joint-employer relationship to exist, each alleged employer must exercise control over the working

3

conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008).

A circuit split exists regarding the precise test used to evaluate joint employment under the FLSA; the Seventh Circuit has not endorsed a test, but has found that the factors enumerated by the Ninth Circuit are "certainly relevant" if not exclusively so. *Moldenhauer* 536 F.3d at 644.[1] Other district courts in this circuit have looked to the test adopted by the Ninth Circuit. *See, e.g., Morgan v. SpeakEasy*, LLC, 625 F. Supp. 2d 632, 649 (N.D. Ill. 2007) (Nolan, J.); *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690 (N.D. Ill. 2015) (Shah, J.). In the Ninth Circuit's four-factor test, courts asks whether the putative employer (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

In assessing the existence of a joint employment relationship under the IWPCA, the Illinois Supreme Court employs a similar test. Relevant factors include the "putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 117, 838 N.E.2d 894, 904 (2005) (citation omitted).

Similarly, for Title VII, courts must ask "whether the putative employer exercised sufficient control, and whether the 'economic realities' are such that the putative employer can be held liable under Title VII." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697 (7th Cir. 2015) (citing *Knight v. United*

---

[1] *Moldenhauer* dealt with the Family Medical Leave Act, not the FLSA, but the court noted that "[t]he joint-employer regulation in the FLSA mirrors that in the FMLA." *Moldenhauer,* 536 F.3d at 644.

*Farm Bureau Mutual Insurance Co.*, 950 F.2d 377, 378–79 (7th Cir.1991)). The Seventh Circuit has employed a five-part test to assess joint employment under Title VII. The test assesses:

> (1) extent of the [purported] employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 929 (7th Cir. 2017). The first factor is the most important, and the factors ultimately all relate to whether the putative joint employer exercised control over the employee. *Id.*

The existence of these relatively complex, multi-factor tests implies that the question of joint employment requires "a fact-intensive inquiry that typically requires further development through discovery." *Penteris v. Citgo Petroleum Corp.*, 104 F. Supp. 3d 894, 900 (N.D. Ill. 2015) (Ellis, J.). Indeed, "[t]he issue of whether an entity is a joint employer is generally unsuitable for resolution at the motion to dismiss stage." *Nor v. Alrashid*, No. 20 C 7470, 2022 WL 815542 at *3 (N.D. Ill. Mar. 17, 2022) (Kocoras, J.).

At this stage, plaintiff has sufficiently plead facts alleging that StoneX controlled aspects of his work environment and was thus his joint employer under the FLSA, IWPCA, and Title VII. First, Kim alleges not only that StoneX had the power to fire him, but did in fact do so. (Dkt. 1 ¶ 71.) Second, Kim alleges that Packard and Swanson, who supervised him, were employed by StoneX, suggesting that StoneX played a role in controlling the conditions of his employment. (Dkt. 1 ¶¶ 10, 15.); *Moldenhauer*, 536 F.3d at 644. Third, Kim alleges StoneX issued Kim one or more paychecks, suggesting a role in determining the rate and method of payment. (Dkt. 1 ¶¶ 50, 53.) Of course, discovery may bring to light facts suggesting that StoneX was not Kim's joint employer, at which point StoneX may again raise the issue at Summary Judgment. But at this stage of litigation,

plaintiff has met his burden. *See Nor v. Alrashid*, No. 20 C 7470, 2022 WL 815542 at *3 (N.D. Ill. Mar. 17, 2022) (Kocoras, J.)

The Court also declines to take judicial notice of plaintiff's purportedly exclusive National Futures Association registration with Global, while also noting that this registration does not dispositively establish the lack of an employment relationship between Kim and StoneX. It is well-established that an employee may have multiple employers, and while Kim's registration with Global might support an employment relationship between Kim and Global, it alone does not undermine a joint relationship with StoneX. *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1128 (N.D. Ill. 2017) (Tharp, J.) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)).

**Conclusion**

Based on the foregoing, the Court denies Defendants' partial motion to dismiss [Dkt. 8].

IT IS SO ORDERED.

Date: 11/18/2022

Entered:
SHARON JOHNSON COLEMAN
United States District Court Judge

6